**E. BROOKE MATLACK, Inc.**

v.

**UNITED STATES et al.**

Civ. No. 15261.

United States District Court,
E. D. Pennsylvania.

March 31, 1954.

**618**

———◆———

Paul F. Barnes, Shertz, Barnes & Shertz, Philadelphia, Pa., for E. Brooke Matlack, Inc.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday, John Guandolo, Special Assts. to Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., for the United States.

Edward M. Reidy, Chief Counsel, Nell Guinn, Washington, D. C., for Interstate Commerce Commission.

Before KALODNER, Circuit Judge, and KIRKPATRICK, Chief District Judge, and CLARY, District Judge.

CLARY, District Judge.

This action, to restrain the enforcement, operation and execution of an order of the Interstate Commerce Commission was heard by a three-judge court convened under the provisions of 28 U.S.C. § 2325, 28 U.S.C. § 2284, and 49 U.S.C.A. § 17(9). The order complained of denied in part the application of the plaintiff E. Brooke Matlack, Inc., hereinafter called "Matlack", for a certificate of public convenience and necessity relating to the transportation of bulk liquids (except milk) and liquefied gas between Pennsylvania and New Jersey. The application was originally heard by a trial examiner and rather extensive testimony was given by Matlack and shippers who appeared on behalf of the application. The only real contestant was an association of trunk line railroads. While one truck carrier did originally intervene, it withdrew before the hearing was completed. The examiner, after hearing, issued a proposed report approving the application in toto. The trunk line railroads filed exceptions thereto, to which the applicant replied. Division 5 issued a report and order which in effect not only sustained every exception of the trunk line railroads but in addition refused rights, the necessity for which the railroads in their exceptions conceded had been established by the testimony. Matlack thereupon submitted a petition for reconsideration or for a further hearing. This petition was denied by the full Commission on the basis that the findings of Division 5 were adequately supported by the evidence and that a further hearing was not shown to be warranted. This action followed.

Matlack is one of the larger tank truck carriers of bulk liquids and liquefied gas, excepting only milk and milk products. It has intrastate irregular route authority between all points in Pennsylvania and like authority in New Jersey. It also has certain limited authority from the Interstate Commerce Commission for the transportation of specific liquid products from certain points in New Jersey to points in Pennsylvania East of Highway 220, which roughly bisects Pennsylvania from North to South, and from Philadelphia in Pennsylvania to certain portions of New Jersey for the carriage of asphalt and other petroleum products. Applicant also holds a number of other point-to-point route authorities between New Jersey and Pennsylvania and other operating rights not bearing on the present application. This application was for irregular route authority for all bulk liquids and liquefied gas, except milk, between points in Pennsylvania and New Jersey. The proposed authority, if allowed, would have the effect of removing the Pennsylvania-New Jersey border from between the two inclusive intrastate authorities presently held by Matlack.

The trunk line railroad contestants own no tank cars for the transportation

of bulk liquids nor do they plan to acquire any. The tank cars used on the railroads are owned exclusively either by shippers or by tank car leasing companies. There was testimony to the effect and it is not contested that these cars are in short supply, are being fully utilized, and further that rail tank cars are unsuitable for less than carload shipments. Many of the present and prospective customers of the shippers who tesified do not have rail facilities available to them. In addition, because of the character of the product involved, most of them prefer or require less than tank car lot shipments.

Matlack at the hearing produced before the examiner witnesses representing twenty-two shippers. Some are among the largest producers of petroleum products, chemicals and invert sugars in the world. They include Esso Standard Oil Company, Texas Company, Allied Chemical & Dye Corp., Dow Chemical Company, Rohm & Haas Co. and the American Sugar Refining Company. All testified concerning past, present or prospective tank truck service requirements in the area. Some manufacture chemicals or food products which require special equipment now owned by Matlack and not otherwise available, or equipment which Matlack has undertaken to purchase and for the acquisition of which it has the necessary resources. All of the shippers represented produce substantial quantities of liquid products suitable for tank truck transport and each expressed its intention to utilize Matlack's new services if the Commission would grant the requisite authority. Specific destination points were named by a number of shippers, while others named only representative points in their sales territories, either because such points were too numerous to set out in their entirety or that they were subject to day to day change or that the competitive situation in the particular industry was such that as a matter of business policy the names of customers were not revealed and that to name a small community as a product destination is tantamount to naming the customer requiring the product. It is true that certain of the shippers stated they would require only seasonable or emergency service but the majority expressed a desire and need for year-round service. The requested authority would to a small extent overlap and be an addition to existing authority granted to other tank truck lines. The only testimony as to the sufficiency of this service was by shippers who had attempted to utilize it and this testimony in effect stated it was entirely inadequate.

In reviewing the action of the Interstate Commerce Commission, the scope of any review of the action of the agency is limited by the provisions of 5 U.S.C.A. § 1009(e). If the order complained of is based upon adequate findings founded on substantial evidence or is a rational conclusion of the matter involved based upon a consideration of the entire record, the reviewing court will not set the order aside. Rochester Telephone Corp. v. U. S., 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Illinois Central R. Co. v. U. S., D.C., 101 F.Supp. 317. The wisdom and experience of the Commission and not of the Courts must govern in a determination of whether a proposed consolidation of rights is in the public interest. McLean Trucking Co. v. U. S., 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544. In other words, stated bluntly, Congress has entrusted to the Commission full responsibility for coordinating transportation within the United States and has strictly limited the scope of a court review. The court, therefore, must depend upon the expert knowledge and findings of the agency involved; in this case, the Interstate Commerce Commission. We, therefore, do not undertake to evaluate the evidence. Were this a matter of first impression and if it were the duty of the court to weigh the evidence, any finding other than that made by the examiner would be contrary to the evidence and the weight of the evidence

and would have to be set aside on that basis. But such is not the case and we do not undertake to evaluate the evidence. We merely look to see whether the Commission has fulfilled the obligations imposed upon it by the Congress of the United States.

Division 5 of the Commission granted various point-to-point or point-to-county authority for some of the liquid products testified to. The remaining requested authority was denied generally on the ground that applicant's burden of showing that the proposed service is required by public convenience and necessity was supported by testimony too general and not sufficiently specific to permit findings upon which any additional authority could be granted; that the needs of some of the shippers were not well defined nor susceptible of determination from the record and that some of the requirements testified to were mere possibilities.

█ A review of the record leads, in some instances at least, to considerable difficulty in understanding the basis upon which the specific points to which transportation of certain products is to be limited were decided upon. It is neither feasible nor proper that this court set out an analysis of the entire record with respect to this criticism. An example or two will serve to make the point clear.

The representative of the American Sugar Refining Company testified that the use of invert or liquid sugar by canneries and other food processors was rapidly expanding and that there was need for additional lined or stainless steel tank truck service into New Jersey from its Philadelphia plant. The witness stated that his company was currently shipping to Bridgeton, Swedesboro, Cedarville, Bordentown and Trenton. He testified further that canneries were in process of changing over to liquid sugar at Milford, Vincentown, Atlantic City and Petersboro. However, he was very careful to point out that the list of towns given above was only a partial list, that there were many other canneries located at different places in South Jersey and

that a full list had not been made up since it was being rapidly added to.

Division 5 recognized that a need for service to this producer had been established but limited the authority granted to the *towns which the witness had actually named*. No rational basis appears for so limiting this grant. It is a matter of common knowledge to the court and certainly should be to the Interstate Commerce Commission that South Jersey where these towns are located is sprinkled liberally with small towns of the character named in which canneries are operated. Other canneries are situated in the same general area but beyond town limits. To so limit applicant's authority on the ground that these were the only towns named and hence a present need was shown is to ignore the realities of the situation. Certainly the Commission has made no findings of fact as provided in the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., which would warrant the specific grants made and exclude all other potential places of use, even those located in the same general neighborhood. Not only is this conclusion completely arbitrary but it is directly contrary to a holding of the Commission itself in R. & F. Transportation Co., Extension—Liquid Sugar, No. MC–52907, decided by Division 5, July 30, 1951. There, the Commission recognized that the use of invert sugar is a rapidly expanding industrial operation and that in order to induce canneries to convert their facilities to the use of liquid sugar and hence make customers of them, it is necessary to have adequate, flexible and expeditious transportation facilities at hand and that tank trucks are the only practicable means of providing such service.

Another example of the approach of the Commission to its solution of the problems posed in this case is found in its treatment of the application of Matlack to carry chemicals between the two States. The assistant traffic manager of the General Chemical Division of Allied Chemical & Dye Corporation testified at some length on the need of his

employer for tank truck facilities to carry heavy acids. This division operates six plants material to this application; one at Newall, Pa. makes nitric, sulfuric and muriatic acids; one at Marcus Hook, Pa. makes phosphoric acid; one at Johnsburg, Pa. makes alum; one at Camden, N. J. makes nitric, sulfuric and muriatic acids; one at Edgewater, N. J. makes nitric, muriatic and phosphoric acids; and one at Dundee, N. J. makes sulfuric acid. Purchases for resale of sulfuric acid are made at Palmerton, Pa. In the normal course of business, shipments are made by this company from the plant nearest the customer as a result of which most of the traffic produced is intrastate. Frequently, however, production interruptions of a given product occur at one plant or another and interstate shipment is made from the plant or plants remaining in production. The witness termed these business dislocations "emergencies". That may be a proper description from the standpoint of the producer. However, there is no testimony other than, considering the whole six plants and the overall production, that such interruptions occur very frequently and from the standpoint of the tank truck operator it would mean to him the opportunity to obtain a fair volume of tank truck interstate business. The uncontradicted testimony was to the effect that while other truck lines have the necessary authority to serve the shipper and the shipper has been utilizing all such equipment as was usable in its business, such equipment fell far short of fulfilling the volume requirements. The report of Division 5 in this regard makes the following comment on this testimony, "General Chemical's traffic moves, for the most part, in intrastate commerce and no real need has been shown for additional services in interstate commerce other than moves of an emergency character". *No authority whatever to transport bulk chemicals was granted* and this despite the additional testimony of requirements by three other producers of liquid chemicals of a character which cannot in any manner be included within the commodity limitations of the authority approved. As to the Union Carbide & Chemical Division of the Union Carbide & Chemical Corp. *no adverse findings of any kind* were made by Division 5 on the service requirements the witness for that company testified to on behalf of his employer and there is no reference made to this shipper's requirements in the portion of the report devoted to an analysis of the needs shown or failing of establishment. There may indeed have been less than the required showing of need by this shipper but the Administrative Procedure Act, supra, requires the Commission to state that result and the reasons therefor. This court is left completely in the dark as to the facts determined by the Commission and such lack of findings precludes an intelligent disposition of this appeal by this court.

Another difficulty that we have had with the report and order of the Interstate Commerce Commission is that we are left entirely in the dark as to any valid reason why the petition for reconsideration and for a further hearing was summarily dismissed. True it is, a blanket statement was made that the findings of Division 5 were adequately supported by the evidence and that a further hearing was not shown to be warranted. It was as clear to the Commission as it is clear to us that Matlack in presenting its application relied upon the previous actions of the Commission in applications of this nature as to the manner in which it presented the application and the quantity and quality of the testimony adduced. Instead of pin-pointing the needs of each individual shipper as to product, place of origin and ultimate destination, the applicant here undertook to show, in accordance with the previously accepted methods approved by the Commission, the broad need of this particular service in the areas involved.

In P. B. Mutrie Motor Transportation, Inc., Extension-Liquid Commodities, No. MC–31600 (Sub.–No. 205), decided November 10, 1950, Division 5 stated:

"It is true that applicant did not submit evidence showing a need for the proposed service on each and every commodity to each and every point in the area for which authority is sought, and, as pointed out by rail carriers protestants, no evidence was presented to show any traffic originating at points in New Hampshire, Vermont, or Maine. However, applicant's tank vehicle service as evidenced by its past and present operations and by its stated intention for the future is for the most part different from that of other carriers in the area. It is designed to meet the peculiar needs of a special class of shippers who cannot adequately be served with ordinary equipment. In presenting shippers who are interested in the movement of a wide variety of liquid commodities, applicant has adopted a practical means of showing a general need for the proposed service. The impracticability of attempting to show definite need for the transportation of every commodity in the class, from and to every point involved, is evident."

The Government argues in its reply brief that this order was later limited by the Commission and therefore the decision is inapplicable, but completely ignores the fact that the petition for reconsideration granted by the Commission alleged and the Commission later found that the evidence *totally failed to disclose any shippers in certain of the areas involved in the grant of authority.* The Commission by its supplementary order did not overrule its approval of the method of proof outlined in its report of November 10, 1950. In fact, it approved the method of proof of commodity destination and merely held that lacking proof of originating shipments the carrier could not pick up shipments in the areas involved.

Likewise in the matter of T. I. McCormack Trucking Company, Inc., Extension—Eastern States, No. MC–52458 (sub–No. 70), decided August 4, 1947, Division 5 stated:

"The rail carriers do not deny that there is need for applicant's service beyond the scope of its present authority. They contend however, that the authority granted should be limited to the transportation of the commodities and from and to the points for which the individual shippers have expressed an immediate and definite need. We do not agree with this contention. In presenting witnesses who are interested in the movement of a wide variety of liquid commodities, applicant has adopted a practical means of showing a general need for the proposed service. The impracticability of attempting to show a definite need for the transportation of every commodity in the class, from and to every point involved, can well be realized. The record is convincing that the proposed service is and will be responsible to the public need, and will not adversely affect the services of other motor carriers in the area to be served. It has frequently been found that shippers are entitled to serve by motor carrier as well as by rail."

 That the Interstate Commerce Commission has the right from time to time to change its policies cannot be questioned. The Supreme Court of the United States in the case of Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80–89, 63 S.Ct. 454, 87 L.Ed. 626, has decided that an agency may from time to time promulgate standards expressing a more sensitive regard for what is right and what is wrong than those prevalent at a prior time. However, where, as here, an applicant relying in good faith upon previously determined standards, as expressed in previous written statements or conclusions of the agencies, acts in strict accordance with such standards, such applicant should not be precluded from an opportunity to meet the revised standards if, without notice, the agency deter-

mines upon new and perhaps more sensitive standards. This is all the more true where, as here, the applicant has stated in writing and unequivocally that it is in a position to meet such revised standards by competent evidence, if allowed the opportunity to do so.

The petition for reconsideration contains the following language:

"Applicant adopted the only practical method of proving its case, namely by showing specific commodities, the volume involved, the territory involved and representative points within the territory. In line with prior decisions, this is sufficient.

"If your Commission believes that each and every point of origin and destination should be catalogued, then applicant is prepared to do so. Applicant requests that it be given a further opportunity to name and catalogue each point for your Commission.

"Applicant, however, believes that the present record will support a much greater grant of authority but if additional proof is required by your Commission, then applicant requests that this case be set for further hearing at which time all facts necessary for appropriate determination will be furnished to your Commission."

This request seems to us to be entirely reasonable. In fact, its denial impinges on due process. Having presented an application and having supported it by the quantity and quality of proof indicated as necessary by previous Commission decisions, applicant had in the opinion of the examiner fully sustained its burden. At that point its only burden was to sustain the findings of the examiner. The exceptions filed by the rail protestants challenged only the sufficiency of the evidence to sustain the findings. We may assume in the absence of any specific findings by the Commission or allegations and proof by the protestants that the granting of the application would not adversely affect the protestants financially. No competing truck carriers opposed the application so we may also assume in the absence of findings by the Commission or of protest on the part of such truck carriers that they would not be adversely affected financially. Whether the applicant is in a position to establish by implementing the undisputed testimony presented by this record the necessity for the additional rights for tank truck service in interstate commerce is, of course, a matter for the sole determination of the Interstate Commerce Commission. In so far as the present application is concerned, we do not feel that the applicant received the consideration to which it was entitled and that the action of the Commission in summarily refusing the request for reconsideration and rehearing under the particular facts of this case in effect denied the applicant a fair hearing.

For the reasons set forth above, the order of the Interstate Commerce Commission will be set aside and the cause remanded for further proceedings not inconsistent with this opinion. An appropriate order may be submitted.