**DUTTON–LAINSON COMPANY,**
Plaintiff,

v.

The **UNITED STATES** of America and
Briggs Transportation Company,
Defendants,

and

The Interstate Commerce Commission,
Intervening Defendant.

Civ. No. 72–0–105.

United States District Court,
D. Nebraska.

Jan. 4, 1974.

Fitzgerald, Brown, Leahy, McGill & Strom and C. L. Robinson, Omaha, Neb., for plaintiff.

John H. D. Wigger, Washington, D. C., for United States.

Manny H. Smith, Washington, D. C., for I. C. C.

Frederick J. Coffman, Lincoln, Neb., John R. Bagileo, Washington, D. C., for Briggs and N. C. C.

Before ROSS, Circuit Judge, DENNEY, District Judge and ROBINSON, Senior District Judge.

## MEMORANDUM

This is an action brought under 28 U.S.C. §§ 1336, 2284 and 2321 through 2325, inclusive, to annul and set aside the decision of the Interstate Commerce Commission in Dutton-Lainson Company v. Briggs Transportation Company, 341 I.C.C. 44. Dutton-Lainson is a Nebraska company having its principal place of business at Hastings, Nebraska. Dutton-Lainson manufactures hand operated steel winches which it ships to customers in Illinois, Indiana, Iowa, Minnesota and Wisconsin. Defendant, Briggs Transportation Company, transports the winches and the charges for Briggs' services form the basis of this lawsuit. By order of this Court dated March 2, 1972 the Interstate Commerce Commission was granted leave to intervene as a defendant.

The plaintiff has exhausted its administrative remedies and the assailed decision is administratively final. The parties have submitted briefs and this matter is now ready for disposition on the merits.

Because the instant controversy concerns charges for transportation provided by a motor carrier, it is necessary to briefly review both the statutory basis and the mechanism whereby transportation charges are established. The statutory basis for these charges is 49 U.S.C. 316(b), which provides in part that "It shall be the duty of every common carrier of property by motor vehicle . . . to establish, observe, and enforce just and reasonable rates, charges and classifications." This section makes it the duty of the motor carrier to establish reasonable charges for its services.

Pursuant to this duty and an agreement approved by the Interstate Commerce Commission, in National Classifications Committee—Agreement, 299 I.C.C. 519 [1956], the motor carriers have established classification for an item entitled "Capstans, Winches or Windlasses." This classification is numbered Item 116440 of the National Motor Freight Classification and provides for a numerical rating of 85 for less than truckload (LTL) shipments of the items and a rating of 45 for truckload (TL) shipments of the items.

In establishing the total charge for a motor carrier's services for a given shipment, the motor carrier applies the classification and a class rate or class tariff. The class rate or class tariff is a schedule showing the cost per 100 pounds for moving first class freight every possible distance it can be moved. The relationship between the classification and the

class rate or class tariff was explained by the I.C.C. in General Increases—Eastern Central Territory, 316 I.C.C. 467, 483 [1961], as follows:

> The classification is designed to reflect the characteristics of the commodity transported; that is, to establish the relationship of a multitude of articles to each other in the rate structure, all to the end of insuring that relatively favorable or unfavorable transportation characteristics are appropriately reflected in the carrier's charges. The class tariff, on the other hand, reflects the characteristics, not of the commodity, but of the haul; that is, it establishes a relationship between localities based upon weight and distance. By use of the classification in conjunction with the class tariff, it is possible for carriers to publish reasonable charges for transporting all articles of commerce between all points in the United States without the necessity of publishing billions of separate and distinct rates.

There are obvious relationships between the classification and the class tariff, but they serve basically different purposes. Generally, the purpose of the classification is to make certain that all items moving in commerce bear their fair share of the costs of the transportation. On the other hand, the class rate is used to ascertain proper revenue levels for the carriers. National Small Shipments Traffic Conference, Inc. v. United States, 321 F.Supp. 500, 503 [D. C.1970]. In the instant case, it is the classification which is attacked by Dutton-Lainson.

In determining the proper classification for an item, many factors are considered. In All States Freight, Inc. v. New York, N.Y. & H. RR., 379 U.S. 343, 85 S.Ct. 419, 13 L.Ed.2d 324 [1964], the United States Supreme Court stated:

> The characteristics of a commodity which are generally considered in determining the classification to which it should be assigned are:
>
> 1. Shipping weight per cubic foot.
>
> 2. Liability to damage.
>
> 3. Liability to damage other commodities with which it is transported.
>
> 4. Perishability.
>
> 5. Liability to spontaneous combustion or explosion.
>
> 6. Susceptibility to theft.
>
> 7. Value per pound in comparison with other articles.
>
> 8. Ease or difficulty in loading or unloading.
>
> 9. Stowability.
>
> 10. Excessive weight.
>
> 11. Excessive length.
>
> 12. Care or attention necessary in loading and transporting.
>
> 13. Trade conditions.
>
> 14. Value of service.
>
> 15. Competition with other commodities transported.

In reviewing this list of characteristics, two observations need be made. First, all the characteristics relate to transportation of the item classified. "The primary purpose of a freight classification is to assign each article to a class according to well-known classification principles or elements *which recognize distinctions from a transportation standpoint,* along fairly broad lines, in order to meet the needs of commerce." (Emphasis added) Class Rate Investigation, 262 I.C.C. 447, 508 [1945]. Secondly, some of the characteristics are easily quantifiable, i. e., shipping weight per cubic foot (lbs./ft.³), and value per pound ($/lb.), while others are not easily quantifiable, i. e., stowability, trade conditions, and care or attention necessary in loading or unloading. Because of the mixture of quantifiable and non-quantifiable characteristics, classification is not an exact science. If one could assign numerical values to all classification characteristics, it would be a simple matter to devise a mathematical formula, insert the proper values, and obtain a classification. Such is not the case.

As the present system operates for our purposes, the carrier establishes, through a tariff association, a classification which it feels is reasonable and just. If the shipper objects to this classification, it can file a complaint with the I.C.C. The I.C.C. is given the authority by 49 U.S.C. § 316(e) to hear and determine that complaint. In determining the merits of the complaint, the I.C.C. listens to the evidence and makes a determination as to whether or not the classification is just and reasonable. In making such a determination, the I.C.C. is required to act in a rational manner. Its action cannot be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C.A. 706(2)(A).

From the nature of its task, it logically follows, and we need no citation of authority to state, that reviewing classifications is essentially a fact finding process. This Court will not upset a decision of the I.C.C. because we would evaluate the evidence differently. That is to say, in reviewing a decision of the I.C.C., this Court would not overturn the I.C.C.'s finding that the evidence shows that *density per cubic foot of an item is x pounds per cubic foot.* Such matters are particularly within the purview of the I.C.C.'s expertise.

What this Court can and will do in reviewing a decision of the I.C.C. is decide whether the I.C.C. acted rationally and whether it findings are supported by substantial evidence.[1]

In determining whether the findings of the I.C.C. in this case are supported by substantial evidence, we face the same problem as did the United States District Court for the District of Colorado, in Ringsby Truck Lines, Inc. v. United States, 263 F.Supp. 552 [1967], appeal dismissed, National Small Shipments Traffic Conference, Inc. v. Ringsby Truck Lines, 389 U.S. 576, 88 S.Ct. 689, 19 L.Ed.2d 775 [1968]. In that case, at page 557, the Court observed "The major difficulty which we encoun-

ter in reviewing the opinion of the Commission under the 'substantial evidence' rule is that the Commission's findings amount to little more than the conclusion that the carriers did not sustain their burden of proof." Likewise, in the instant case, the Commission's findings amount to little more than that the shipper did not meet its burden of proof. The Court in *Ringsby,* supra, then went on to state the test for reviewing a finding of the Commission which is negative in form.

> [W]here, as here, the ultimate finding is negative in form, it need be supported only by "sufficient basic findings of fact to warrant a reviewing court in concluding that the Commission was not without rational grounds" for holding that the burden has not been met. Chicago & E. I. R. v. United States, 107 F.Supp. 118, 125 [S.D.Ind.1952], aff'd, 344 U.S. 917 [73 S.Ct. 346, 97 L.Ed. 707] [1952].

The Court is unable to ascertain the exact basis of the Commission's holding in this case, but it appears that the Examiner accorded considerable weight to the following factors: (1) That winches are complex and have moving parts; (2) that the present classification has been in existence without change or challenge since 1952; and (3) that Dutton-Lainson's evidence concerning densities was of questionable reliability. The Court will examine these basic findings of fact in seriatum.

As to the fact that winches are complex and have moving parts, the Court is unable to find any basis in law or fact for the proposition that this finding has any relationship to transporting the item. The moving parts are encased in a cardboard box, which would indicate that any bearing on transportation would be minimal at best. The hearing examiner seems to take the position that the articles tendered for shipment by the plaintiff are winches and not hand tools and that, accordingly, the classification assigned is correct. This

1. 5 U.S.C.A. § 706.

approach begs the question presented for consideration: Is the present classification for winches, as applied to plaintiff's steel hand winches, reasonable and just? The Commission is not being asked to determine the best description for an item, but rather to exercise its discretion and rule on the reasonableness of the items classification. We entertain no doubts as to the fact that the term "winch" more fully and completely describes plaintiff's hand winches than does the term "hand tool."

As to the second factor, the hearing examiner found, " . . . though not pivotal, yet entitled to consideration here, is the fact that the present classification has been in existence without change or challenge since 1952. The facts and arguments pressed by complainant do not rebut the presumption of reasonableness which long continued such use and acceptance carried with it (sic). [Citation omitted]." 341 I.C.C. 49.

■ Apparently, the Examiner placed the burden of proof on the issue of reasonableness on the petitioner by virtue of the presumption of reasonableness. In any case, petitioner admits that it has the burden of proof, and this factor is merely a restatement of the ultimate conclusion of the Examiner.

The final factor covers the Examiner's rejection of Dutton-Lainson's data on density. The Examiner's justification for this rejection was that there was " . . . no suggestion that any of the data gathered was based upon a recognized or preconceived plan of sampling." *Dutton-Lainson, supra,* at page 49. In support of its decision to completely discount the probative value of the data, the Examiner cites Classification Ratings on Furniture, 337 I.C.C. 709. The Classification case does support the general thesis that data should be gathered through the use of recognized sampling techniques. However, the Examiner's application of that prop-

osition to this case is questioned by this Court. First, the instant case is much different on the facts. The Classification case was an action on behalf of 5,500 motor carriers to change ratings on 9,419 items of furniture involving 200 descriptions of furniture. The need to reduce data to a manageable format is obvious. This case involves one shipper praying for the change of one classification description.

Secondly, the carriers in the Classification case " . . . should be able to obtain all the essential information from observations of their own operations." Classification Rating on Furniture, *supra,* at page 713. In the instant case, the data which Dutton-Lainson can gather from observation of its own operations is limited. Dutton-Lainson has no access to data from other shippers. The Classification case recognized this limitation, "Most shippers refuse to release density data." Classification Rating on Furniture, *supra,* at page 713.

The above distinctions are of great practical significance. A hearing on whether or not a classification is just and reasonable is of little value to a relatively small shipper if the burden of proof which he is required to meet is so high that he cannot possibly carry it. He has a hearing in form only.

■ Dutton-Lainson, in the hearing before the I.C.C., presented evidence on all relevant transportation characteristics for its winches. This evidence included data on density for the entire universe of its winches.[2] Except for the data on density, there is no indication that the Examiner considered the other evidence. The Court feels that the Commission should consider this evidence, exercise its discretion, and make a determination as to whether the classification for winches, capstans and windlasses, as applied to Dutton-Lainson's winches is unjust and unreasonable. We do not feel that Dutton-Lainson should be required to present representative data for

---

2. The data on density was for winches manufactured and not winches shipped. Since the question presented concerns winches shipped, the latter data would be more relevant.

all winches, capstans and windlasses shipped in the United States. Dutton-Lainson has neither the resources nor the access to data necessary for such a study, and the statutory basis for transportation charges does not impose such an onerous burden on individual shippers.

■ What we have said here should not be interpreted as foreclosing practical considerations in the classification procedure. We fully realize the problems in establishing and administering a system of freight charges for all articles moving in the stream of commerce. In the interest of administering and standardizing such a system, approximations and compromises will have to be made. Such is the area where the Commission's expertise should be exercised. In the interest of those directly affected by the system, however, the Commission should make every effort to clearly state its objectives and rationale. A general statement that the petitioner has failed to meet its burden of proof, without sufficient basic findings of fact in support of such statement, does not meet the standard of clarity which is required in a proceeding such as this.

■ As stated by the Supreme Court in Burlington Truck Lines v. United States, 371 U.S. 156, 167, 83 S. Ct. 239, 245, 9 L.Ed.2d 207 [1961], "There are no findings and no analysis here to justify the choice made, no indication of the basis on which the Commission exercised its expert discretion. We are not prepared to, and the Administrative Procedure Act will not permit us to accept such adjudicatory practice. [Citation omitted]. Expert discretion is the lifeblood of the administrative process, but 'unless we make the requirements for administrative action strict and demand, *expertise,* the strength of modern government, can become a monster which rules with no practical limits on its discretion.'" [Citation omitted].

An order remanding this case to the I.C.C. for further proceedings will be entered contemporaneously with this Memorandum.

ROSS, Circuit Judge.

I concur in the remand. Dutton-Lainson, in order to prove its allegations, chose to present various statistical samples which purported to demonstrate that Dutton-Lainson's hand winches were unjustly classified. The Commission rejected this data on the grounds that there was "no suggestion that any data gathered was based upon a recognized or preconceived plan of sampling."

I agree with Judge Denney that this statement is vague, and states no factual basis to support the conclusion. I believe, therefore, that Dutton-Lainson is entitled to have the Commission state:

" 'sufficient basic findings of fact to warrant a reviewing court in concluding that the Commission was not without rational grounds' for holding that the burden has not been met. . . . " Ringsby Truck Lines, Inc. v. United States, 263 F.Supp. 552, 557 (D.Colo.1967), appeal dismissed, National Small Shipments Traffic Conference, Inc. v. Ringsby Truck Lines, 389 U.S. 576, 88 S.Ct. 689, 19 L.Ed.2d 775 (1968).

However, I disagree with the majority that it is too onerous a burden to require Dutton-Lainson to statistically sample products of other shippers. The short answer to this argument is that Dutton-Lainson chose to prove its allegations in this manner, and it should not be allowed to deviate from the way it first elected to proceed before the Commission. By reference to the Commission's decision in Classification Ratings on Furniture, 337 I.C.C. 709 (1970), it is argued that Dutton-Lainson cannot discharge the burden of a valid statistical sample because "[m]ost shippers refuse to release density data." *Id.* at 713. A reading of the Commission's decision in that case indicates that such a statement was made in a fact situation wherein shippers refused to release den-

sity data to carriers in order to frustrate the carriers' attempt to increase the tariff rates charged to shippers. Such is not the case here, where a shipper is making inquiry of other shippers.

Accordingly, Dutton-Lainson is entitled to a specification of why the Commission considered Dutton-Lainson's samples to be invalid. But Dutton-Lainson is not entitled to retry its case before the Commission. To the extent set forth herein, I concur in the judgment of the Court.